### E. F. WARE v. C. A. NELSON *et al.*
#### No. 146.

LANDLORD AND TENANT—*From Year to Year.* A tenant under a lease for one year, who holds over and continues to occupy the premises for several years after the expiration of the term specified in the lease, with the assent of the landlord, becomes a tenant from year to year, and the tenant cannot terminate the tenancy without giving to the landlord a written notice at least three months before the end of the year.

MEMORANDUM.— Error from Bourbon district court; J. S. WEST, judge. Action by E. F. Ware against C. A. Nelson and M. B. Weedon to recover a balance due for rent. Judgment for defendants. Plaintiff brings the case to this court. Reversed. The opinion herein, filed July 13, 1896, states the material facts.

*H. L. Heald*, and *R. W. Neal*, for plaintiff in error; *Cory & Hulbert*, of counsel.

*Biddle, Boyle & Sheppard*, for defendants in error.

The opinion of the court was delivered by

JOHNSON, P. J. : This suit was commenced by E. F. Ware, in the district court of Bourbon county, against C. A. Nelson and M. B. Weedon, partners as Nelson & Weedon, to recover a balance due for rent of a storeroom. A jury trial was waived and the case

submitted to the court on the following agreed statement of facts :

"It was agreed that the defendants were partners during the time as alleged, and that on the 14th day of November, 1884, said partnership being then engaged in the grocery business elsewhere in the city of Fort Scott, rented of this plaintiff the storeroom described, and took possession.  A lease was drawn up, of which a copy is as shown in the exhibit to the bill of particulars.  Said possession was taken on December 1, 1884, and plaintiff's property was occupied by the said partnership continuously as a grocery store during the dates hereinafter mentioned.  About the 1st day of January, 1886, the plaintiff and the defendants had a conversation which resulted in the continuance of the lease and the possession of the defendants. And the following indorsement was made upon the lease : ' This lease continued, to run to end of December, 1886,' said extension being for the entire year of 1886.  Afterward, and on or about the 1st day of January, 1887, the plaintiff and the defendants again got together and readopted the said lease, and extended it verbally for another year, being the year of 1887, but no indorsement was made upon the said lease.

"Afterward the defendants held over under the said lease, and the said lease was continued and the following indorsement placed thereon : ' This lease continued for one year, to end of 1888.'  At the end of the year of 1888 the said lease was verbally extended for another year, and a change made in the terms of the lease, that the rent should be at the rate of $600 a year in place of the former sum.  At the end of the year 1889 the said tenants held over for another year, without any agreement or talk upon the subject between the plaintiff and defendants.  At the end of 1890 the defendants continued to hold over for another year, and did so without any talk between the parties or arrangement or agreement, the rent continuing to be at the rate of $600 a year.  This plaintiff was absent from home, and returned December 9, 1891, at 2

;'clock P. M. That evening the plaintiff's father told plaintiff that Nelson & Weedon, the defendants, wanted to see plaintiff and wanted a reduction of rent. Plaintiff was busy at the time and did not see the defendants, and upon Friday forenoon, to wit, December 11, a boy in the employ of the defendants came to plaintiff and said that defendants wished to see him upon the afternoon of said December 11. This plaintiff went and had a brief talk with the defendants in the afternoon, at the store, and plaintiff was requested to state what was the best figure that he could name for the rent of the store building, as defendants desired a material reduction of rent. This is the first conversation or communication between the parties concerning any change of tenancy or reduction of rent, and no word was received by plaintiff from defendants upon that subject during the year of 1891 until as above described. The plaintiff told defendants he would meet them and agree upon a price. Upon Saturday afternoon, December 12, the defendant Weedon came up to the office of the plaintiff and wanted to know the price. Prices were discussed for a short time, plaintiff refusing to give exact figures, but said that he would meet both defendants and would come to an agreement, but would waive no legal rights, if any he had, under the lease. Thereupon some little controversy grew up between plaintiff and said Weedon in regard to legal rights.

"Upon Sunday, December 13, Nelson & Weedon verbally notified plaintiff, through plaintiff's father, that the defendants were going to move. This was the first intimation that the plaintiff ever received that the defendants were going to move. Upon Monday forenoon, December 14, Weedon, the defendant, verbally notified the plaintiff that the firm was going to move. At 4.15 P.M., December 15, 1891, there was handed to the plaintiff a written notice that the defendants would move. Said notice is the only written notice served upon the plaintiff by defendants. The original of said written notice is hereto attached, marked exhibit 'A.' At noon, January 1, 1892, the defendants left with the plaintiff the keys of said

property. On December 31, 1891, defendants went to plaintiff's office to deliver the key to the store. Plaintiff being away from home, they could not and did not then deliver it, having theretofore removed from said building except as to some coal hereafter mentioned. Upon January 16, 1892, the defendants got back the keys so as to unlock the building and take away some coal which they said they had stored in the cellar or basement. When the keys were left with the plaintiff, as stated, the plaintiff declined to receive the keys, stating that he held defendants still for the rent. After the leaving of the keys as aforesaid the defendants refused to occupy the said premises and refused to pay rent for the same, and the plaintiff has held the property open, subject to their occupation, and ready and willing at all times that the said defendants should use and occupy the same.

"While this lease calls for rent payable monthly in advance, as a matter of fact, for several years, during the latter occupation, the rent was not paid in advance, but was paid by the defendants to the plaintiff when it became most convenient for them to pay. It was not paid in advance during the last four years at any one time. The rent was, during the four years, always paid after it was due. Upon May 23, 1889, the plaintiff was given a check at one time for $300, being for rent then due. No other acts were done to cancel the lease or to terminate the tenancy than are herein agreed upon, and the question is submitted upon these agreed facts as to whether the defendants are legally bound to pay the rent for the period claimed in the bill of particulars. The said property during the time sued for was vacant all of the time, except one week, when a man desired to rent it for an exhibition. The plaintiff notified the defendants that it was desirable that it should not remain idle and that the exhibitor should have it for one week. The defendants disclaimed all right or claim to the property, and the plaintiff rented the said property for one week, and received the sum of $12.

"The original of the correspondence on the subject between the plaintiff and defendants is hereto attached.

There has never been any trouble between the parties and the relation of the parties has been amicable throughout. The question is presented on this agreed statement of facts that the ruling of the court may be obtained as to the correctness of the defendants' position that the lease terminated absolutely upon January 1, 1892. All rent has been paid to the 31st of December, 1891, but none has since been paid."

"EXHIBIT A.

"FT. SCOTT, KAN., December 12, 1891.

"*E. F. Ware, Esq.:* Sir—This is to notify you that we shall vacate the room rented from you on Market street, and occupied by us as a grocery, on the 1st day of January, 1892.—NELSON & WEEDON."

"FT. SCOTT, KAN., February 8, 1892.

"*Messrs. Nelson & Weedon:* A man wishes to rent the store building under me for a week for $12. I claim that you are still renting it. You claim you are not. I suggest that we let the man have the place and pay the $12 without prejudice to the rights of either of us. If this suits your approval, please say so on back of this note and I will let the man in, and it shall be without prejudice to each of us. Very respectfully, E. F. WARE.

"February 8, 1892.

*Answer:* "We have no claim on your property since the first of the year. You can dispose of it as suits you. Yours, &c., NELSON & WEEDON."

The lease referred to in the pleadings and in the agreed statement of facts which existed between the parties, together with all the indorsements thereon, is as follows:

"This indenture, made this 14th day of November, in the year of our Lord 1884, between E. F. Ware, of Fort Scott, in the county of Bourbon and state of Kansas, of the first part, and C. A. Nelson and M. B. Weedon, of Fort Scott, in the county of Bourbon and state of Kansas, of the second part:

"Witnesseth, that the said party of the first part,

in consideration of the rents and covenants herein specified, does hereby let and lease to the said party of the second part the following-described property, to wit: The lower floor and cellar of the brick building covering the southeast half of lot No. 17, block No. 5, Fort Scott, Bourbon county, Kansas, being the store building now occupied by Mr. J. C. Bennett, together with the appurtenances, reserving the second story. Said lower floor and cellar are to be used solely and exclusively by the parties to whom leased, and no other business is to be conducted therein except groceries and such matters as pertain thereto, and lessees have no right to sublet. This lease is for the term of 12 months, to commence the 1st day of December, A. D. 1884, at the monthly rent of $65, payable monthly in advance: *Provided,* That in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part or his attorney to reenter into and repossess the said premises, and the parties of the second part and each and every other occupant to remove and put out. And the said parties of the second part do hereby hire the said premises for the term above mentioned, and do covenant and promise to pay to the said party of the first part, as rent for said premises, the sum of $65 per month, in time and manner as aforesaid. And the said parties of the second part hereby expressly waive the benefit of all exemption laws of the state of Kansas relating to personal property for the payment of said rent, and further agree that they will, at their own expense, during the continuance of this lease, keep the said premises and every part thereof in good repair, and will not re-lease or assign this lease without the written consent of said party of the first part, and at the expiration of said term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damages by the elements excepted. And the said party of the first part does covenant that the said party of the second part, on paying the aforesaid installments and performing all the covenants aforesaid,

shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.

"Witness our hands and seals, the day and year above written.　　　　E. F. WARE.

　　　　　　　　C. A. NELSON.　[SEAL.]
　　　　　　　　M. B. WEEDON.　[SEAL.]"

"Lessees to permit no waste or nuisance on the property, nor keep, nor store thereon or therein, any substance that will invalidate the owner's present insurance policy. The owners not to be called upon to make any repairs or improvements, nor to be obliged to make any unless he chooses. All glass to be put in, and property to be returned in like condition.

　　　　　　　　E. F. WARE.
　　　　　　　　M. B. WEEDON."

"This lease continued, and to run to end of December, 1886.　　　　E. F. WARE.
　　　　　　　　NELSON & WEEDON."

"This lease continued for one year, to the end of 1888."

"Rent reduced to $50 per month, and continued to another year."

The district court, on the agreed statement of facts, rendered a judgment for the defendants. Plaintiff excepted and brings the case here, and asks this court for a reversal of the judgment.

The only question involved in this case is, Where a tenancy is created from year to year, can the tenant terminate the tenancy on 17 days' notice?

Section 2 of chapter 55, General Statutes of 1889, (¶ 3611) reads:

"When premises are let for one or more years, and the tenant, with the assent of the landlord, continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant from year to year."

Section 5 (¶ 3614) reads:

"All tenancies from year to year may be determined

by at least three months' notice, in writing, given to the tenant prior to the expiration of the year."

Under the agreed statement of facts, it is clear that the defendants were tenants from year to year, and the tenancy could not be determined by the landlord without his giving the tenants three months' notice in writing, before the expiration of the year. If the landlord could not terminate the tenancy without three months' notice in writing, we do not think that the tenants could terminate the tenancy without giving notice to the landlord, in writing, for the same length of time. The rights and duties of the landlord and tenants are reciprocal, and the tenant could not terminate the tenancy on shorter notice than the landlord could.

The judgment is reversed, and the case remanded to the district court, with direction to enter up judgment for the plaintiff, on the agreed statement of facts, for the amount of $150, with six 6 per cent. interest thereon from April 1, 1892.

All the Judges concurring.